**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VALENTIN PETROV, Individually and On Behalf of All Others Similarly Situated, | ) Civil Action No. |
| | ) |
| Plaintiff, | ) |
| | ) CLASS ACTION |
| vs. | ) |
| | ) COMPLAINT FOR VIOLATIONS |
| MELLANOX TECHNOLOGIES, LTD, EYAL WALDMAN, MICHAEL GRAY and JACOB SHULMAN, | ) OF THE FEDERAL SECURITIES |
| | ) LAWS |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) JURY TRIAL DEMANDED |

13 CV 1225

1

Plaintiff, Valentin Petrov, individually and on behalf of all others similarly situated, alleges the following against Mellanox Technologies, Ltd. ("Mellanox" or the "Company"), and certain of the Company's executive officers and directors (the "Individual Defendants"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation:  (a) review and analysis of public filings made by Mellanox with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants; (c) review of news articles, shareholder communications, and postings on Mellanox's website concerning the Company's public statements; and (d) review of other publicly available information concerning Mellanox and the Individual Defendants.

## I.    NATURE OF THE ACTION

1.    This is a federal securities class action brought against Mellanox and certain of its officers and directors for violations of the federal securities laws.  Plaintiff brings this action on behalf of all persons or entities that purchased shares of Mellanox securities between April 19, 2012 and January 2, 2013, inclusive (the "Class Period"), seeking to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  The Exchange Act claims allege that Defendants engaged in a fraudulent scheme to artificially inflate the Company's stock price.  As a result of the fraud described below, and its subsequent disclosure, the Company has lost a substantial portion of its value.

2.    Mellanox, a fabless semiconductor company, produces and supplies interconnect products for computing, storage, and communication applications in the computing, Web 2.0, storage, financial services, database, and cloud markets. It offers semiconductor interconnect

products that facilitate data transmission between servers, storage systems, communications infrastructure equipment, and other embedded systems. The company provides solutions based on the InfiniBand protocol, including adapters, switch and gateway integrated circuits (ICs), adapter cards, switch and gateway systems, cables, and software. InfiniBand is a switched fabric communications link used in high-performance computing and enterprise data centers. Its features include high throughput, low latency, quality of service and failover, and it is designed to be scalable. Mellanox was incorporated in 1999, and is headquartered in Yokneam, Israel. The company is dual-listed on NASDAQ and the Tel Aviv Stock Exchange. The Company's common shares have been registered and trading on the NASDAQ since 2007.

3. Plaintiff alleges that throughout the Class Period, Defendants materially misrepresented and failed to disclose material adverse facts about the Company's operations, financial well-being, and future prospects. Defendants' actions resulted in the artificial inflation of Mellanox stock during the Class Period. As a result of Defendants' wrongful acts, false and misleading statements and omissions, and the resultant precipitous decline in the market value of the Company's securities, Plaintiffs and the other Class members have suffered significant losses and damages.

4. During the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts concerning Mellanox's business, operations and prospects. Specifically, Defendants made false and misleading statements and failed to disclose that the temporary increase in sales of Mellanox's InfiniBand products was induced by a one-time server processor refresh cycle, and would be unsustainable in the future. In Q1 of 2012, server vendors started shipping systems with the long-awaited Intel Xeon E5 (code name Romley) platform, and included Mellanox's InfiniBand product offerings among its preferred

interconnection tools. InfiniBand is a hardware interconnection tool that allows servers, databases and computers to communicate with each other.  While pent-up customer demand for the powerful new processor was muted in the enterprise server market, system designers in the high-performance computer ("HPC") market had been holding off on their orders in anticipation of Romley-based servers.  As HPC clusters were upgraded to the Intel Romley core, corresponding orders were made for Mellanox's InfiniBand interconnectors as well.  As a result, Mellanox revenue jumped 22% quarter-over-quarter in March 2012 as customers stocked product for their HPC server launches.  However, Defendants knew – based upon their work in co-developing the InfiniBand chip for use in Intel's Romley CPU – that the sales bump induced by the Romley CPU upgrade cycle would be short-lived.  Nevertheless, Defendants continued to make bullish statements emphasizing a broadening of market demand and strong customer adoption of the InfiniBand protocol, even though Defendants knew that demand for its product would decrease since the Intel Romley upgrade cycle would be largely completed by the end of 2012.

5.    As the Intel Romley CPU upgrade cycle ran its course, Mellanox knew that the Company's revenue growth would eventually plateau in late 2012 and decline in 2013.  In spite of this knowledge, Mellanox repeatedly increased its forward financial guidance throughout the Class Period.  Moreover, Mellanox also concealed reports of technical glitches with the FDR 56 Gb/s InfiniBand cabling, which was diminishing sales demand and increasing the Company's manufacturing costs.

6.    Through a series of partial public disclosures made by the Company between September 7, 2012 and January 3, 2013, the market learned that the Company's business was not as robust as Mellanox had portrayed it throughout the Class Period, causing a precipitous decline

in Mellanox's stock price from its Class Period high of $119.93 per share down to $50.70 per share – a massive decline of nearly 58%.

## II.    JURISDICTION AND VENUE

7.    This action arises under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a) and 78t-1, and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b 5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act.   Many of the acts and conduct complained of herein, including the dissemination of materially false and misleading information to the investing public, occurred in substantial part in this district.   The NASDAQ National Exchange is also located in this District, and the Company held or participated in various investor and technology conferences occurring in this District during the Class Period.

10.    In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    THE PARTIES

12.    Plaintiff, Valentin Petrov, purchased Mellanox common stock during the Class Period, as set forth in the Certification attached hereto and incorporated herein by reference, and suffered damages thereon.

13.    Defendant Mellanox is a corporation incorporated under the laws of Israel, with its corporate headquarters located in Yokneum, Israel.   During the Class Period, Mellanox had

more than 42 million shares of common stock outstanding, which traded on the NASDAQ under the ticker symbol "MLNX."

14.    Defendant Eyal Waldman ("Waldman") is a co-founder of Mellanox, and has served as Mellanox's Chief Executive Officer, President and Chairman of Mellanox's Board of Directors since March 1999.

15.    Defendant Michael Gray ("Gray") served as Mellanox's CFO from 2004 until his resignation on November 5, 2012.

16.    Defendant Jacob Shulman ("Shulman") has served as Mellanox's Chief Financial Officer since November 2012. Previously, Mr. Shulman served as Mellanox's Vice President of Finance from March 2012 to October 2012, and as Mellanox's Corporate Controller from June 2007 to March 2012.

17.    Defendants Waldman, Gray, and Shulman are collectively referred to herein as the "Individual Defendants."

18.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Mellanox, their control over, receipt and/or modification of Mellanox's allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning Mellanox, participated in the fraudulent scheme alleged herein.  The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the executive personnel at the highest level of the Company, including the Individual Defendants.

19.    During the Class Period, the Individual Defendants, as senior executive officers of Mellanox, were privy to confidential, proprietary and material adverse non-public information

concerning Mellanox, its business operations, finances, financial condition and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection with their executive positions. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

20.    The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the Exchange Act, and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Mellanox's business.

21.    The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and, through such analysts, to the investing public. The Individual Defendants were provided with copies of the Company's various reports, and publicly disseminated documents alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or could have caused them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

22.    As senior executive officers and/or directors, and as controlling persons of a publicly traded company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and were traded on the NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Mellanox's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so the market price of Mellanox's securities would be based on truthful and accurate information.  The Individual Defendants' misrepresentations and omissions occurring during the Class Period violated these specific requirements and obligations.

23.    The Individual Defendants are liable as participants in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Mellanox's publicly traded securities by disseminating materially false and misleading statements and/or concealing material adverse facts.

IV.    **SUBSTANTIVE ALLEGATIONS**

    A.    **Company Background**

24.    Mellanox Technologies is a leading supplier of end-to-end InfiniBand and Ethernet interconnect solutions and services for computer servers and storage.  Mellanox interconnect solutions increase data center efficiency by providing the highest throughput and lowest latency, delivering data faster to applications,  and by unlocking system performance capability. Mellanox offers a choice of fast interconnect products: adapters, switches, software and silicon that accelerate application runtime and maximize business results for a wide range of markets, including high performance computing, enterprise data centers, Web 2.0, cloud, storage

and financial services. The Company's most lucrative product offerings are its InfiniBand connectivity products. InfiniBand technology is used to transfer and store data in high end computing and data centers.

25.    During the Class Period, Defendants made false and misleading statements and failed to disclose that the temporary increase in sales of Mellanox's InfiniBand products was induced by a one-time server processor refresh cycle and would be unsustainable in the future. In Q1 of 2012, server vendors started shipping systems with the long-awaited Intel Xeon E5 (code name Romley) platform, and included Mellanox's InfiniBand product offerings among its preferred interconnection tools. While pent-up customer demand for the powerful new processor was muted in the enterprise server market, system designers in the high-performance computer ("HPC") market had been holding off on their orders for Romley-based servers. As HPC clusters were upgraded to the Intel Romley core, corresponding orders were made for Mellanox's InfiniBand interconnectors as well. As a result, Mellanox revenue jumped 22% quarter-over-quarter in March 2012 as customers stocked product for their HPC server launches. However, Defendants knew – based upon their work in co-developing the InfiniBand chip for use in Intel's Romley CPU – that the sales bump induced by the Romley CPU upgrade cycle would be short-lived. Indeed, without the Romley upgrade shipments, there was actually no growth in sales of Mellanox's core products in the 1Q and 2Q of 2012. Nevertheless, Defendants continued to make bullish statements regarding a broadening of market demand and strong customer adoption of InfiniBand products, even though Defendants knew that the demand for its products would decrease since the Romley upgrade cycle would largely be completed by the end of 2012.

26.    As the Intel Romley CPU upgrade cycle ran its course, Mellanox knew that the Company's revenue growth would eventually plateau in late 2012. In addition, Mellanox's

inventory was dramatically increasing, both within the Company and in the hands of at least one significant OEM customer, which would decrease sales and profit margins going forward. Moreover, Mellanox concealed reports of technical glitches with the FDR 56 Gb/s InfiniBand cabling, which were diminishing sales demand and increasing the Company's manufacturing costs. Despite this knowledge, Mellanox repeatedly increased its forward financial guidance throughout the Class Period.

### B.     Defendants' False and Misleading Statements

27.     The Class Period commences on April 19, 2012. On that date, the Company issued a press release reporting on its earnings for the first quarter 2012, ended March 31, 2012. The Press Release stated in pertinent part the following:

> In accordance with U.S. generally accepted accounting principles (GAAP), the company reported record revenue of $88.7 million for the first quarter, up 22.1 percent from $72.7 million in the fourth quarter of 2011, and up 61.2 percent from $55.1 million in the first quarter of 2011. GAAP gross margins in the first quarter of 2012 were 67.4 percent, compared with 64.0 percent in the fourth quarter of 2011 and 64.7 percent in the first quarter of 2011.
>
> * * *
>
> "Our strong quarterly revenue growth reflects the **increased penetration of our high-performance InfiniBand and Ethernet interconnect solutions in new markets**, in addition to our traditional High Performance Computing (HPC) market, specifically, the Web 2.0, database, storage and cloud markets," said Eyal Waldman, chairman, president and CEO of Mellanox Technologies. "The recent launch of Intel Romley and Sandy Bridge-based server and storage platforms has created a **significant industry-upgrade and end-user demand for high-performance interconnects**."

28.     On April 19, 2012, Mellanox hosted a conference call for analysts, media representatives and investors. During the call, Defendant Waldman reiterated the financial results reported in the Company's press release, and emphasized that, **"even without those kind of one-time lump opportunities, [Mellanox was] experiencing a very healthy growth in [its]**

*revenues*" and that as expected, the Company's Infiniband product offerings **"continue[d] to gain traction in the marketplace."** In response to investor concerns regarding potential competition from Intel, Waldman stated it would, **"take several years for Intel until they… come with something that is competitive."**

29. On July 18, 2012, Mellanox issued a press release reporting on earnings for the second quarter of 2012, ended June 30, 2012. The Press Release stated in pertinent part the following:

> In accordance with U.S. generally accepted accounting principles (GAAP), the company reported record revenue of $133.5 million for the second quarter of 2012, up 50.4 percent from $88.7 million in the first quarter of 2012, and up 110.7 percent from $63.3 million in the second quarter of 2011.
>
> * * *
>
> "Mellanox surpassed the $100 million quarterly revenue milestone, generating over $133 million of revenue," said Eyal Waldman, chairman, president and CEO of Mellanox Technologies. "We benefited from growth in the HPC, Web 2.0, storage, database, cloud, Big Data and financial services markets. **We believe this growth demonstrates the broader market acceptance of both our FDR 56Gb/s InfiniBand and 10 and 40 Gigabit Ethernet solutions.** More customers realize that 'fast interconnect' provides them with a higher return-on-investment and lower total cost of ownership."

30. Despite knowing that demand was decreasing as the Romley upgrade cycle was nearing completion, Defendants continued to increase the Company's sales guidance. On July 18, 2012, Mellanox hosted a conference call for analysts, media representatives and investors. During the call, Defendants increased the Company's third quarter 2012 sales forecasts to a range of $150 million to $155 million. This figure far exceeded analysts' estimates of $104 million for this period. In addition, Defendant Waldman continued to emphasize the broadening market for and adoption of Infiniband technology, stating:

> "**We continue to see InfiniBand take market share in various markets as the leading interconnect for server and storage platforms**, providing the best return on investment to information technology infrastructure users. **We are seeing**

***InfiniBand become more dominant as a storage interconnect across various markets and applications***. The storage interconnect is a large market sized at several billion dollars and we expect this revenue momentum to materialize in the coming years as the design wins we are working on with our storage OEM customers go into production. ***We are seeing continued adoption of InfiniBand as the leading interconnect in Web 2.0 and cloud data centers and expect to experience growth of InfiniBand utilization in this market in the second half of 2012 and into 2013.***"

31.     Throughout the Class Period, Defendants issued various press releases, SEC filings, financial reports and other statements that consistently touted strong and consistent demand for Mellanox's products.  To hear Defendants tell it, the Company was poised to capitalize on its strong business fundamentals and embark on a prolonged expansion period, thus increasing what were already impressive financial results.  Unfortunately for the Company's shareholders, however, the case for Mellanox was but a house of cards that would come crashing down when the truth concerning the Company's actual business operations came to light.

## C.    **Reasons For Falsity**

32.     Mellanox's statements and filings during the Class Period discussed above were materially false and misleading because they failed to disclose and misrepresented the true nature and scope of the Company's business, financials, prospects, and operations.  Defendants failed to disclose material adverse information regarding the Company, including, among other things, the following:

(i)      Mellanox knew that its impressive 1Q and 2Q 2012 sales growth was unsustainable and was not due to broadening of the InfiniBand market or significant adoption of the InfiniBand protocol, but rather that the sales bump was temporary in nature due to a one time server processor upgrade cycle attributable to the Intel Romley CPU.

(ii)     Mellanox had been receiving numerous customer complaints regarding glitches and other technical issues with its InfiniBand products;

(iii)    Mellanox's inventory was increasing, both within the Company and with at least one significant OEM customer, which would decrease sales and profits in the future;

    (iv)     Mellanox knew that Intel had been in the process of developing its own competing adaptor with potential bandwidth speeds almost twice as fast as Mellanox's current offering, which would dramatically decrease demand for Mellanox products.

    (v)     As a result of the above, the Company's statements and omissions concerning its business, operations, and future growth prospects were materially false and misleading and lacking in any rational basis when made.

33.    Through a series of revelations occurring between September 7, 2012 and January 3, 2013, the market learned that the Company's business was not as Defendants had portrayed it throughout the Class Period.

    **D.**    **The Truth Comes to Light**

34.    On Friday, September 7, 2012, Stifel Nicolaus downgraded Mellanox shares from "Buy" to "Hold," on a forecast of slowing demand going forward.  On this news, Mellanox stock fell 7.6%, from $119.93 to $110.85 per share.  On the following Monday, September 10, 2012, Defendant Gray, who had been CFO since 2004, announced his resignation.  On this news, the stock again fell 8% from its September 7, 2012 close of $110.85 per share to close at $101.65 pre share on September 10, 2012.

35.    On September 10, 2012, Kerrisdale Capital published an article on *Seeking Alpha* entitled, "Mellanox: End of Romley Upgrade Signals Steep Downside."  The Kerrisdale Capital report concluded that shares of Mellanox were highly overvalued because the Intel Romley chip upgrade cycle had reached a plateau and would soon decline.  Indeed, the report cautioned investors that due to the cyclical nature of Mellanox's 56 GB/s "FDR" Infiniband business, the recent uptick in revenues for Q1 and Q2 of 2012 should not be extrapolated into a long term trend.  The report also estimated that stripping out revenues tied to the Romley CPU upgrade cycle, the Company did not experience any growth in its core business.

36.     On October 17, 2012, Mellanox issued a press release announcing financial results for the third quarter of 2012.  In the earnings press release, the Company reported $156.5 million in 3Q 2012 revenues, but also issued lower than expected 4Q 2012 financial guidance of between $145 and $150 million in revenues.  On this news, the Company's stock price plummeted from its close of $104.92 per share on October 16, 2012 to close at $77.99 per share on October 18, 2012 – a nearly 30% drop.

37.     On January 2, 2013, Mellanox issued a press release announcing the Company's 4Q 2012 earnings.  Defendants were forced to concede that Mellanox had missed its 4Q 2012 revenue guidance of a range of $145 to $150 million in revenues by upwards of 20%, reporting projected revenues to be in the range of $119 million to $121 million.  The shortfall was blamed on, "a weaker demand environment, challenging macroeconomic conditions, and a technical issue associated with FDR 56Gb/s InfiniBand cabling."   In reaction to the news, Mellanox's stock price plummeted from $61.19 per share to a closing price of $50.70 per share on January 3, 2013 – a decline of 18% on extremely heavy trading volume.

## V.    NO SAFE HARBOR

38.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  Many of the specific statements pleaded herein were not identified as forward-looking statements ("FLS") when made.  Because most of the false and misleading statements related to existing facts or conditions, the Safe Harbor has no applicability.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

39.    Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Mellanox who knew that those statements were false when made.

## VI.    UNDISCLOSED ADVERSE INFORMATION

40.    The market for Mellanox' securities was an open, well-developed and efficient market at all relevant times.  As a result of the materially false and misleading statements and failures to disclose described herein, Mellanox's securities traded at artificially inflated prices during the Class Period.  However, after the above revelations seeped into the market, Mellanox shares were hammered by massive sales, sending then down ***nearly 58%*** from their Class Period high.

41.    Plaintiff and the other members of the Class purchased or otherwise acquired Mellanox's securities relying upon the integrity of the market price of these Mellanox securities and other market information related to Mellanox, and have been damaged thereby.

42.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Mellanox's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Such statements and omissions were materially false and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, its business and operations, as alleged herein.

43.     At all relevant times, the material misrepresentations and omissions particularized herein directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about Mellanox's business, prospects and operations.

44.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Mellanox and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' false and misleading statements made during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## VII.    SCIENTER ALLEGATIONS

45.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

46.     Defendants issued false and misleading statements during the Class Period to artificially inflate Mellanox's stock price to permit certain insiders to cash out their Mellanox holdings by selling millions of dollars of Company stock on the open market at prices inflated by Defendants' fraud.  Defendants Waldman and Gray sold $4.9 and $1.7 million, respectively, of Mellanox stock during this period.

47.     As set forth herein, Defendants, by virtue of their receipt of information reflecting the true facts regarding Mellanox, their control over, receipt and/or modification of Mellanox's allegedly materially misleading statements and omissions, and/or their positions with the Company, which made them privy to confidential information concerning Mellanox, participated in the fraudulent scheme alleged herein.

48.     The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest levels of the Company, including the Individual Defendants.

## VIII.   LOSS CAUSATION

49.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Mellanox's securities and operated as a fraud or deceit on Class Period purchasers of Mellanox's securities by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information.  When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Mellanox's securities fell as the prior inflation came out of the Company's stock price.  As a result of their purchases of Mellanox's securities during the Class Period, Plaintiff and the other Class members suffered economic loss.

50.     By failing to disclose the true state of the Company's business prospects and growth strategy, investors were not aware of the true state of the Company's financial status. Therefore, Defendants presented a misleading picture of Mellanox's business and prospects. Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused Mellanox to conceal the truth.

51.     The decline in the price of Mellanox's common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraudulent conduct finally being revealed to investors and the market.  The timing and magnitude of Mellanox's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.  The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Mellanox's securities, and the subsequent decline in the value of Mellanox's securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## IX.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

52.     At all relevant times, the market for Mellanox stock was an efficient market for the following reasons, among others:

    a.   Mellanox securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

    b.   As a regulated issuer, Mellanox filed periodic public reports with the SEC and the NASDAQ;

    c.   Mellanox securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace; and

      d.   Mellanox regularly issued press releases which were carried by national newswires.  Each of these releases was publicly available and entered the public marketplace.

53.    As a result, the market for Mellanox securities promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in Mellanox's stock price.  Under these circumstances, all purchasers of Mellanox securities during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

## X.    CLASS ACTION ALLEGATIONS

54.    Plaintiff bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased or otherwise acquired Mellanox securities during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Mellanox, and the directors, officers and employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

55.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States.  Throughout the Class Period, Mellanox securities were actively traded on the NASDAQ (an open and efficient market) under the symbol "MLNX".  As of November 2, 2012, the Company had approximately 42

million shares outstanding.  Record owners and the other members of the Class may be identified

from records maintained by Mellanox and/or its transfer agents, and may be notified of the

pendency of this action by mail, using a form of notice similar to that customarily used in

securities class actions.

56.    Plaintiff's claims are typical of the claims of the other members of the Class as all

members of the Class were similarly affected by Defendants' wrongful conduct in violation of

federal law that is complained of herein.

57.    Plaintiff will fairly and adequately protect the interests of the members of the

Class, and have retained counsel competent and experienced in class and securities litigation.

58.    Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class.  Among the

questions of law and fact common to the Class are:

a.    whether the federal securities laws were violated by Defendants' acts and

omissions as alleged herein;

b.    whether Defendants participated in and pursued the common course of

conduct complained of herein;

c.    whether documents, press releases, and other statements disseminated to

the investing public and the Company's shareholders during the Class Period misrepresented

material facts about the business, finances, financial condition and prospects of Mellanox;

d.    whether statements made by Defendants to the investing public during the

Class Period misrepresented and/or omitted to disclose material facts about the business,

finances, value, performance and prospects of Mellanox;

e.    whether the market price of Mellanox common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.    the extent to which the members of the Class have sustained damages and the proper measure of damages.

59.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## **COUNT I**
### **For Violations Of §10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants**

60.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

61.    During the Class Period, Mellanox and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Mellanox common stock; and (iii) cause Plaintiff and the other members of the Class to purchase Mellanox stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Defendants, and each of them, took the actions set forth herein.

62.    These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Mellanox securities in violation of §10(b) of the Exchange Act and Rule 10b-5. Defendants are sued as primary participants in the wrongful and illegal conduct charged herein. The Individual Defendants are also sued herein as controlling persons of Mellanox, as alleged herein.

63.    In addition to the duties of full disclosure imposed on the Exchange Act Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

64.    Mellanox and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Mellanox as specified herein. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts,

practices, and a course of conduct as alleged herein in an effort to assure investors of Mellanox's

value and performance and substantial growth, which included the making of, or the

participation in the making of, untrue statements of material facts and omitting to state material

facts necessary in order to make the statements made about Mellanox and its business, operations

and future prospects, in light of the circumstances under which they were made, not misleading,

as set forth more particularly herein, and engaged in transactions, practices and a course of

business which operated as a fraud and deceit upon the purchasers of Mellanox's securities

during the Class Period.

65.     Each of the Individual Defendants' primary liability, and controlling person

liability, arises from the following facts: (i) each of the Individual Defendants was a high-level

executive and/or director at the Company during the Class Period; (ii) each of the Individual

Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or

director of the Company, was privy to and participated in the creation, development and

reporting of the Company's operational and financial projections and/or reports; (iii) the

Individual Defendants enjoyed significant personal contact and familiarity with each other and

were advised of and had access to other members of the Company's management team, internal

reports, and other data and information about the Company's financial condition and

performance at all relevant times; and (iv) the Individual Defendants were aware of the

Company's dissemination of information to the investing public which they knew, or recklessly

disregarded, was materially false and misleading.

66.     These Defendants had actual knowledge of the misrepresentations and omissions

of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed

to ascertain and to disclose such facts, even though such facts were readily available to them.

Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Mellanox's actual operating condition, business practices and future business prospects from the investing public, and thereby supporting the artificially inflated price of its stock. As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

67.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Mellanox securities was artificially inflated during the Class Period. In ignorance of the fact that the market price of Mellanox shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants, but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired Mellanox securities during the Class Period at artificially inflated high prices and were damaged thereby.

68.     At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Mellanox, which were not disclosed by the

Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired Mellanox securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

69.     By virtue of the foregoing, Mellanox and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**COUNT II**
**For Violations of §20(a) of the Exchange Act**
**Against the Individual Defendants**

71.     Plaintiff repeats and realleges the allegations set forth above as though set forth fully herein.  This claim is asserted against the Individual Defendants.

72.     The Individual Defendants were and acted as controlling persons of Mellanox within the meaning of §20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

74.     As set forth above, Mellanox and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## IV.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

a)      Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)      Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

c)      Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)      Awarding such other relief as this Court deems appropriate.

## V.    <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: February 22, 2013                    **LAW OFFICES OF CURTIS V. TRINKO, LLP**

By: _Curtis V. Trinko_

Curtis V. Trinko (CT-1838)
Jennifer Traystman (JT-7583)
C. William Margrabe
16 West 46th Street, 7th Floor
New York, NY 10036
Tel:  (212) 490-9550
Fax:  (212) 986-0158
Email:  Ctrinko@trinko.com

*Liaison Counsel for Plaintiff*

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White III
Lester R. Hooker
Brandon T. Grzandziel
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431
Tel:  (561) 394-3399
Fax:  (561) 394-3082

**RYAN & MANISKAS, LLP**
Katharine M. Ryan
Richard A. Maniskas
995 Old Eagle School Rd., Ste. 311
Wayne, PA 19087
Tel:  (484) 588-5516
Fax:  (484) 450-2582

*Attorneys for Plaintiff*

## CERTIFICATION

I, *VALENTIN PETROV* ("Plaintiff") declare, as to the claims asserted under the federal securities laws that

1.    Plaintiff has reviewed the complaint and authorizes its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary. I understand that is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.    Plaintiff's purchase and sale transaction(s) in the Mellanox Technologies, Ltd. (NASDAQ: MLNX) security that is the subject of this action during the Class Period is/are as follows:

PURCHASERS

| Buy Date | Shares | Price per Share |
|---|---|---|
| 11/02/12 | 275 / 500 | $79.289 / $79.252 |
| 12/03/12 | 225 | $70.678 |
| 12/19/12 | 400 / 100 | $64.35 / $64.37 |
| 12/20/12 | 100 | $58.495 |
| | | |

SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
| 02/08/13 | 1,600 | $54.2786 |
| | | |
| | | |
| | | |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

5.    Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except as described below _____ yes _____

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __18__ day of _February_ 2013.